UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ROBERT FRANKLIN, individually on behalf of all putative class members, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:21-CV-00354 |
| v. | § § | |
| APPLE INC., | § § | |
| Defendant. | § § § | |

**PLAINTIFF'S FIRST AMENDED ORIGINAL
COMPLAINT AND PETITION FOR CLASS CERTIFICATION**

1.      Plaintiff, Individually and as a Representative of similarly situated consumers as members of any putative class, brings the following claims against Apple, Inc. and respectfully states:

**PARTIES**

2.      Plaintiff, Robert Franklin, is a resident of Hopkins County, Texas and lives within the Eastern District of Texas. Plaintiff's residence within Hopkins County, Texas is his true, fixed, and permanent home.

3.      Defendant, Apple Inc., is a California corporation incorporated in the state of California with its principal place of business located at 1 Infinite Loop, M/S 38-3TX, Cupertino, California 95014. Defendant is and, at all relevant times, was doing business in the State of Texas by selling and distributing its products. Defendant has previously appeared in this action through counsel of record and may be served via the Federal Rules of Civil Procedure and the Court's ECF system.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction of this cause of action pursuant to 28 U.S.C. § 1332(a). Plaintiff's true, fixed, and permanent home is in Hopkins County, Texas. Therefore, Plaintiff is a citizen of Texas. Defendant is incorporated in California and maintains its principal place of business in California, and is, thus, a citizen of California. Therefore, as Plaintiff is a citizen of Texas, and Defendant is a citizen of California, complete diversity exists. Additionally, Plaintiff seeks damages in excess of $75,000. Moreover, jurisdiction is also proper pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332, *et. seq.* because the amount in controversy for the proposed class is greater than $5,000,000.

5.      Defendant is subject to personal and general jurisdiction in this Court because it maintains minimum contacts with Texas and engages in systematic and continuous contacts with Texas by selling its products in Texas. Defendant purposefully avails itself of the privilege of doing business in Texas by knowingly selling its products directly or indirectly to Texas consumers. The subject claims arise from or relate to the Defendant's contact with Texas. Apple has previously appeared through Counsel of record and may be served with this amended complaint via the Court's electronic management system (ECF).

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) & (c) and CAFA because Defendant is subject to personal jurisdiction in this District and is, therefore, a resident of this District. Moreover, Plaintiff is a resident of this District, and all or a substantial part of the underlying facts occurred within this District.

## FACTS

7.     Apple is involved in the manufacture, distribution, and sale of the iPhone 6 series battery contained in the iPhone 6 series phones. The subject model iPhone 6 battery was installed in the iPhone 6 and sold throughout the state of Texas, including Plaintiff's iPhone 6.

8.     The subject model iPhone 6 battery was installed in thousands of iPhone 6 series phones sold and distributed in Texas. The iPhone 6 series battery contains a defect at the time it is sold which renders it unable to perform its intended function and unfit for its intended purpose. The iPhone 6 battery contains a defect which makes it unable to reliably perform its function of powering the iPhone 6 without overheating. This defect creates a danger of explosion and fire in the iPhone 6 series devices.

9.     In or around August of 2018, the iPhone 6, IMEI 352018078688608 was purchased from the Wal-Mart Supercenter located at 1750 S Broadway St, Sulphur Springs, TX 75482. Accordingly, Plaintiff's iPhone 6 was originally purchased within the Eastern District of Texas. The subject iPhone 6 was purchased in new condition. Upon information and belief, the subject iPhone contained the original Apple battery. At no time since the purchase of the subject iPhone 6 until the time of the explosion was a replacement battery or third-party/non-Apple battery installed in the subject iPhone 6. Further, the subject iPhone 6, from the date of purchase until the date of the explosion, did not sustain any damage, including, but not limited to, water damage, fire damage, smoke damage, crushing forces or cracking. There was no known damage caused to the subject iPhone 6 from the date of purchase until the date of the explosion. The subject iPhone 6 contained the subject model iPhone 6 battery that was un-merchantable and defective.

10.     Upon information and belief, hundreds and likely many thousands of iPhone 6 series devices were also purchased within the Eastern District of Texas and throughout the State of Texas, equipped with the subject model iPhone 6 series battery.

11.     On August 15, 2019, Robert Franklin was listening to music on his iPhone 6, when he noticed the music playing on his iPhone began to skip. As he picked up his iPhone to investigate, his iPhone suddenly exploded and caught fire in his face, causing him to fall to the ground. In an attempt to mitigate his fall, Mr. Franklin instinctively tried to brace himself with his right hand. When Mr. Franklin fell to the ground, he immediately felt a burning pain in his eyes and right wrist. Mr. Franklin suffered injuries to his eyes and wrist as a result of this incident, and these injuries continue to plague Mr. Franklin to this day. The following photographs depict the condition of the subject iPhone 6 subsequent to the incident:





12.     With a defective battery, Mr. Franklin's iPhone 6 was unsafe to operate and was destroyed by the explosion. Plaintiff incurred economic loss damages associated with the loss and replacement of his iPhone 6 and subsequent medical treatment for his injuries.

13.     Mr. Franklin, before ever considering filing a lawsuit to remedy this defect, contacted Apple about the explosion. In response, Apple advised Mr. Franklin Apple wanted to perform a rigorous inspection of the subject iPhone 6 and its battery at their selected lab in Warren, Michigan outside of Detroit. Mr. Franklin agreed. Under the proposed protocol proffered by Apple, the defective iPhone 6 was packaged and delivered in person by Mr. Franklin's counsel to Safety Engineering Laboratories, Inc. in Warren, Michigan in order to enable Apple to assess the

condition of the phone, the cause of the damage and to prevent additional explosions occurring in other iPhone 6 series phones across Texas and around the world.

14.     The inspection took place at Safety Engineering Laboratories in Warren, Michigan on July 30, 2020, and lasted over three (3) hours. Attending for Apple were two separate engineers and their hired Chicago attorney via Zoom. At the inspection, Mr. Franklin agreed to allow Apple's retained engineers to perform a series of x-rays and computed tomography (CT) scans of the subject iPhone 6 as well as take various photographs, videos, position the iPhone 6 however Apple desired and to take microscopic images of the phone. The following images depict portions of the inspection:







15.    Despite going through this rigorous process and Mr. Franklin incurring thousands of dollars of his own expenses, Apple never again responded to Mr. Franklin regarding the cause of the explosion or even offered to explain its findings.

16.    Contrary to any assertion to the contrary that the defect at issue is "unspecified" or uncommon, Apple was well aware of the defect in iPhone 6 series phones prior to selling the phone in a new condition to Mr. Franklin in August of 2018 and is still aware of this issue today.

17.    On January 22, 2016, a Delaware man reported his iPhone 6, Serial number F9CQ81N3G5QG, overheated and burned him.[1]

18.    On September 18, 2016, the following post was made on the Apple Community web site by user McNamara1314:



McNamara1314

Level 1  (5 points)          iPhone

Q:  iPhone 6 exploded

Ever since I did the last update on my iPhone 6, the home button has been extremely hot and the battery would only hold a charge for about 6 hours. The home button has actually burned my fingers a few times. I never had any issues before the update. This morning, I was laying down with my phone on my chest and the entire bottom of the screen exploded. All of the glass surrounding the home button shattered and shards of glass stuck into my neck and face. I'm lucky I had my glasses on, or the glass would have been in my eyes. I've done a lot of research today and have read many stories about the home button being hot, but never about one that got so hot that it exploded.
Does anybody know how to contact Apple directly? From past experiences, the Apple Store is certainly not the place for me to have this dealt with.
Thank you in advance.

Posted on Sep 18, 2016 10:46 AM

19.    On October 7, 2016, ABC News reported a California woman, Yvette Estrada, observed a flash followed by flames that jolted her out of bed. She stated that she heard a sizzling then a pop and fire was coming out of the screen of her iPhone 6 Plus. ABC News reported this

---

1 *See* United States Consumer Product Safety Commission Consumer Report Number 20160722-2567D-1583173 available online at https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1583173.

was the second explosion of an iPhone 6 in the same week, the other one being Darin Hlavaty on the East Coast.[2] Mr. Hlvaty, a student in New Jersey, reported his iPhone 6 Plus exploded in his back pocket, burning a hole in his jeans.[3]

20.     On October 25, 2016, Ronnie Portee of Sumter South Carolina had his iPhone 6 explode in his pocket resulting in severe burns to his back, arms and limbs.[4] Mr. Portee is involved in ongoing litigation with Apple regarding that incident.

21.     In December 2016, the Consumer Council (SHCC), a consumer watchdog group chaired by a Shanghai member of the Municipal People's Congress in China, put up a notice on its website on December 2nd that eight (8) iPhones reportedly exploded from Sept. 1 to Nov. 30 of 2016. The group highlighted two specific cases involving an iPhone 6 and 6s Plus: Mr. Zhang reported to the SHCC that his iPhone 6 (bought in November 2014) suddenly started smoking and spontaneously self-combusted in standby mode on Sept. 30 this year; Ms. Chen reported to the SHCC that an iPhone 6s Plus (bought in March 2015) spontaneously self-combusted, cracking the screen and the phone's back with a blackening battery on Aug. 31 of this year. In another example, one woman stated her iPhone 6S Plus exploded in August 2016 shattering the screen and leaving the battery and back of the phone blackened.[5]

22.     On December 31, 2016, a 58-year-old man stated that his iPhone 6, which was in his right front pocket, began to make a loud noise and exploded and caught fire. It burned through

---

2 *See* ABC News Story available online at https://abc7.com/iphone-explosion-catches-fire-explodes/1544704/.
3 *See* ABC News Story available online at https://6abc.com/rowan-university-mount-laurel-new-jersey-apple/1534315/.
4 *See* news story available online at https://amp.thestate.com/news/local/article215974135.html.
5 *See* news story available online at https://www.bbc.com/news/business-38233804 and https://qz.com/856738/china-says-some-apple-aapl-iphones-are-exploding/

his pocket, went down and came out his pants leg. He sustained 1st and 2nd degree burns on his thigh and shin.[6]

23.     On January 14, 2017, a Missouri man was using his iPhone 6 when it got very hot and later bulged out.[7]

24.     On October 17, 2017, a man reported to the Consumer Products Safety Commission his iPhone 6s became extremely hot after using it for only 2-5 minutes and was a burn hazard.[8]

25.     Further, on July 15, 2019, it was reported Apple was investigating the explosion of an iPhone 6 battery while it was in the hands of an 11-year-old girl.[9]  Images of the iPhone 6 taken after that explosion document its condition:



---

6 *See* United States Consumer Product Safety Commission Consumer Report Number 20170103-81D20-2147408570 available online at https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1620185.
7 *See* United States Consumer Product Safety Commission Consumer Report Number 20170125-2F4BB-1626695 available online at https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1626695.
8 *See* United States Consumer Product Safety Commission Consumer Report Number 20170817-45AF3-1687918 available online at https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1687918
9 *See* news report available online ahttps://www.saferproducts.gov/PublicSearch/Detail?ReportId=1626695.

26.     In 2019, a woman reported her iPhone 6 battery exploded while just laying in a drawer and posted the following image[10]:



27.     On May 14, 2018, ABC News reported an iPhone 6 battery exploded while sitting on a desk at a repair shop while awaiting a cracked screen replacement. The explosion was captured on video[11]:



28.     On April 20, 2017, the law firm of Gustafson Nicolai PC filed suit against Apple in Los Angeles Superior Court Case No. BC658648 in connection with an iPhone 6 that exploded in the Plaintiff's pocket. The explosion caused the destruction of the phone and burned a hole through the Plaintiff's pants and caused significant burns to his right thigh area. Gustafson Nicolai PC has also filed five other similar complaints against Apple and related parties.[12]

---

11 *See* video available online at https://pocketnow.com/iphone-6s-battery-explosion-las-vegas.
12 *See e.g., Seontaik Kim; Mina Choi; Hwiram K., a minor v. Apple Inc. and Verizon Communications, Inc.*, Santa

29.     The Federal Aviation Administration ("FAA") has also received multiple reports of various incidents involving iPhone 6 devices overheating or exploding which resulted in mid-air emergencies or flight diversions. For instance, on August 1, 2018, during SkyWest Airline's flight 5654, from Helena, MT (HLN) to Salt Lake City, UT (SLC) a passenger reported that her cellphone (an Apple iPhone 6) was emitting smoke and generating heat; on April 10, 2018, on flight 2981, from Seattle, WA (SEA) to Salt Lake City, UT (SLC), during approach a passenger's iPhone 6S started to spark/smoke. The customer burned his hand and Flight Attendants placed the device in fire containment bag with water and then in lavatory sink; on November 27, 2016, a ASAA flight 850, from Kona, HI to Seattle, WA diverted to Honolulu, HI as a precautionary measure due to an iPhone 6 that experienced excessive heating. The flight attendant reported the device was hot and continued to get hotter. The flight attendant placed the device in a thermal battery containment bag; on October 12, 2015, Alaska airlines flight 17 from Newark, NJ to Seattle, Washington diverted to Buffalo, NY when an iPhone 6+ overheated and began to burn. The flight attendant extinguished it with a fire extinguisher. On or about March 21, 2016, an iPhone 6 caught fire on an Alaskan Airlines flight resulting in 8-inch flames. Apple reported it was investigating this incident.[13] A photograph of the phone after the incident was depicted as follows:

---

Clara County Superior Court Case No. 17CV319298, filed on November 16, 2017; *Morley v. Apple, Inc.*, Santa Clara County Superior Court Case No. 17CV310047, filed May 12, 2017; *Speaks v. Apple Inc. and Verizon Communications, Inc.*, Santa Clara County Superior Court Case No. 17CV312922, filed July 12, 2017; *Jalaycia T., a minor v. Apple Inc. and AT&T Corp.*, Santa Clara County Superior Court Case No. 17CV314575, filed August 16, 2017; and *Umeh v. Apple Inc. and Airtouch Cellular, Inc.*, Fresno County Superior Court Case No. 17CECG03499, filed October 11, 2017.

13 *See* news story and photograph of phone available online at https://9to5mac.com/2016/03/21/iphone-6-fire-flight-hawaii/.



Further, French investigators have announced they believe the co-pilot's iPhone 6 could be the cause of the mysterious crash of EgyptAir flight MS804, which went down on May 19, 2016, killing 66.[14]

30.     In January 2018, two different Apple stores had to be evacuated after battery explosions incidents. The first, involving an Apple employee in Zurich, Switzerland, resulted in the employee receiving burn injuries when an iPhone 6 battery caught on fire. The store had to be evacuated. The second, occurring at an Apple Store in Valencia, Spain, resulted in an entire floor being evacuated after an iPhone battery exploded.[15]

31.     On November 16, 2020, a Texas man reported he picked up his iPhone 6 and noticed that it was bulging from the back, which also made the screen break down the middle. He reported he could see inside the phone due to the expansion, and there also appear to be chemical

---

14 *See* news story available online at https://fortune.com/2017/01/15/iphone-theory-egyptair-ms804/.
15 *See* news story available online at https://www.ibtimes.co.uk/second-iphone-battery-explodes-apple-store-europe-this-time-spain-1654679.

burns where the screen broke.[16]  Photographs of that incident demonstrate a similar bulging to Mr. Franklin's incident:



32.     While discovery will flesh out the exact cause of the battery failure or componentry failure in the iPhone 6 series batteries, the defect is a common, known issue to Apple and any attempt by Apple claiming ignorance is disingenuous.

---

16 *See* United States Consumer Product Safety Commission Consumer Report Number 20201117-3E527-2034394 available online at https://www.saferproducts.gov/PublicSearch/Detail?ReportId=2034394.

## ROBERT FRANKLIN'S INDIVIDUAL CLAIMS FOR RELIEF

### COUNT ONE
Strict Liability (Design Defect)

33.      Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

34.      Defendant manufactured, created, designed, assembled, altered installed, distributed, supplied, sold, and maintained the subject iPhone and placed it in the stream of commerce.

35.      The design, manufacture, and sale of the subject iPhone created a dangerous, unsafe, and defective condition, which existed at the time the iPhone left the hands of Apple.

36.      At the time the iPhone was designed, manufactured, and placed into the stream of commerce by Defendant, it was in a defective and unreasonable dangerous condition.

37.      At all times material hereto, Defendant was engaged in the business of designing, manufacturing, refurbishing, and/or selling iPhones of the type at issue.

38.      Upon information and belief, the aforementioned iPhone was expected to, and did, reach its end user without substantial change in the condition it was in when it left the business premises of Defendant.

39.      The aforementioned iPhone came in a white Apple box and included a white charging cable.

40.      Mr. Franklin neither misused nor materially altered the iPhone, and it was in the same or substantially similar condition that it was in at the time it left the hands of the Defendant.

41.      At all relevant times, including when the incident alleged occurred, the iPhone was used in an intended and foreseeable manner.

42.     The iPhone design and/or alteration was defective because the danger associated with the use of the iPhone as designed outweighs its utility.

43.     Specifically, at the time of Mr. Franklin's injury, the iPhone was in a defective condition unreasonably dangerous to users due to:

i)      Lack of a mechanism to prevent the iPhone from overheating, catching fire and/or exploding;

ii)     Lack of audible or visual warnings and/or alarms to alert users that the iPhone was overheating and could explode;

iii)    Lack of a functioning mandatory shutdown of the iPhone once it reached a certain internal temperature;

iv)     Lack of proper component parts; and

v)      Such other and further particulars as the evidence may show.

44.     Mr. Franklin's ability to avoid injury was frustrated by the absence of such alternative designs incorporated into the iPhone design.

45.     Considering costs, safety, and functionality, a feasible alternative design existed at the time that the iPhone was manufactured, created, designed, altered, assembled, installed, distributed, supplied, sold, and maintained.

46.     As a direct and proximate result of the iPhone's defective design, Mr. Franklin was injured and severely burned.

47.     By reason of the foregoing, Mr. Franklin is entitled to recover damages for all general, special, and pecuniary damages proximately caused by Defendant and the defective condition of the iPhone when placed into the stream of commerce.

48.     Wherefore, Mr. Franklin demands judgment against Defendant, for all actual and compensatory damages together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

### COUNT TWO
Strict Liability (Manufacturing Defect)

49.     Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

50.     Defendant manufactured, created, designed, assembled, altered installed, distributed, supplied, sold, and maintained the iPhone and placed it in the stream of commerce.

51.     Mr. Franklin neither misused nor materially altered the iPhone, and it was in the same or substantially similar condition that it was in at the time that it left the hands of the Defendant.

52.     At all relevant times, including when the incident alleged herein occurred, the iPhone was used in an intended and foreseeable manner.

53.     The iPhone was defective in formulation or manufacture, such that when it was placed in the stream of commerce, it was unreasonably dangerous in that it was more dangerous than an ordinary user would expect given the conditions and circumstances that foreseeably attend its use and more dangerous than similar products which were available to Mr. Franklin.

54.     The danger associated with the use of the iPhone outweighs its utility.

55.     The iPhone did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended or reasonably foreseeable way.

56.     Specifically, at the time the iPhone overheated and exploded, the iPhone was in a defective condition unreasonably dangerous to users due to:

  i)   Lack of a mechanism to prevent the iPhone from overheating or exploding;

ii) Lack of audible or visual warnings and/or alarms to alert users that the iPhone was overheating and could explode;

iii) Lack of a functioning mandatory shutdown of the iPhone once it reached a certain internal temperature;

iv) Lack of proper component parts; and

v) Such other and further particulars as the evidence may show.

57.     Mr. Franklin's ability to avoid injury was frustrated by the manufacturing defects of the iPhone.

58.     As a direct and proximate result of the iPhone's defective formulation and/or manufacture, Mr. Franklin was severely burned.

59.     By reason of the foregoing, Mr. Franklin is entitled to recover damages for all general, special, and pecuniary damages proximately caused by Defendant and the defective condition of the iPhone when placed into the stream of commerce.

60.     Wherefore, Mr. Franklin demands judgment against Defendant for all actual and compensatory damages together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

**COUNT THREE**
Strict Liability (Failure to Warn)

61.     Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

62.     Defendant manufactured, created, designed, assembled, altered installed, distributed, supplied, sold, and maintained the iPhone and placed it in the stream of commerce.

63.     Therefore, Defendant had a duty to warn users about the hazards inherent in the iPhone Platform.

64.     The iPhone Platform posed potential risks that were known and/or should have been known by Defendant at the time of design, manufacture, distribution, and/or sale.

65.     Specifically, the iPhone was in a defective condition unreasonably dangerous to users due to:

  i)   Lack of a mechanism to prevent the iPhone from overheating, catching fire or exploding;

  ii)  Lack of audible or visual warnings and/or alarms to alert users that the iPhone was overheating and could catch explode;

  iii) Lack of a functioning mandatory shutdown of the iPhone once it reached a certain internal temperature;

  iv)  Lack of proper component parts; and

  v)   Such other and further particulars as the evidence may show.

66.     Mr. Franklin was unaware of the dangerous nature of the iPhone.

67.     Because of these facts, the iPhone presented a substantial danger during intended and reasonably foreseeable use not readily recognizable to the ordinary user.

68.     Defendant failed to adequately warn or instruct users, including Mr. Franklin, of these potential risks of substantial danger.

69.     The lack of such warnings rendered the iPhone defective.

70.     As a direct and proximate result of the Defendant's failure to adequately warn of the substantial danger posed by the iPhone, it was defective, and Mr. Franklin was severely burned.

71.     By reason of the foregoing, Mr. Franklin is entitled to recover damages for all general, special, and pecuniary damages proximately caused by Defendant and the defective condition of the iPhone when placed into the stream of commerce.

72.     Wherefore, Mr. Franklin demands judgment against Defendant, for all actual and

compensatory damages together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT FOUR
### Negligence

73.    Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

74.    Defendant manufactured, created, designed, assembled, altered, installed, distributed,supplied, sold, modified and/or maintained the iPhone.

75.    Additionally, Defendant specified and/or selected the component parts used on the iPhone.

76.    The component parts specified and/or selected for the iPhone were grossly improper, specifically including the battery and its componentry.

77.    Defendant had a duty to exercise reasonable care to adopt safe design of the iPhone so that users such as Mr. Franklin could safely use it as intended.

78.    Defendant had a duty to exercise reasonable care in assembling and/or selecting componentparts and inspecting and testing them before the iPhone left their possession to ensure that it was safe for its intended and reasonably foreseeable uses.

79.    Defendant had a duty to warn users about the dangers of which they knew or reasonably should have known arising from the use of the iPhone and an affirmative duty to protect the ultimate users from the hazards inherent in its defective design.

80.    Specifically, Defendant knew that the iPhone was dangerous to users due to:

   i)  Lack of a mechanism to prevent the iPhone from overheating, catching fire or exploding;

   ii) Lack of audible or visual warnings and/or alarms to alert users that the iPhone wasoverheating and could catch exploding;

iii) Lack of a functioning mandatory shutdown of the iPhone once it reached a certaininternal temperature;

iv) Lack of proper component parts; and

v)  Such other and further particulars as the evidence may show.

81.     Mr. Franklin was unaware of the dangerous nature of the iPhone.

82.     Defendant should have known that ultimate users such as Mr. Franklin would not realize theseinherent dangers.

83.     Defendant owed Mr. Franklin a duty of reasonable care and were negligent, grossly negligent, willful, wanton, reckless and careless, and breached their respective duties of care by:

i)     Failing to use reasonable care and precautions to ensure the safe use of the iPhone;

ii)     Failing to use reasonable care in the design of the iPhone;

iii)     Failing to exercise reasonable care in the manufacture of the iPhone;

iv)     Failing to exercise reasonable care in the specification, selection, and distribution of component parts for the iPhone;

v)     Failing to exercise reasonable care in the assembly of the iPhone;

vi)     Failing to incorporate safeguards into the design of the iPhone to prevent it from presenting an unreasonable risk of substantial danger to users;

vii)     Failing to exercise reasonable care in the inspection and testing of the iPhone;

viii)     Failing to exercise reasonable care in the installation of the component parts of the iPhone;

ix)     Failing to provide proper and safe materials for use in the and with the iPhone;

x)     Failing to take measures to ensure that the iPhone and accompanying parts were merchantable and safe for their intended use prior to placing these products in the stream of

commerce;

xi)     Failing to discover through testing procedures that the iPhone was not properly manufactured and safe for its intended use;

xii)    Failing to discover through inspection procedures that the iPhone did not contain proper materials/parts and was unreasonably dangerous to users;

xiii)   Failing to adopt, implement, and/or convey adequate warnings of the dangers arising from the intended, reasonable, and foreseeable use of the iPhone; and

xiv)    On such other and further particulars as the evidence may show.

84.     Defendant's negligence was a substantial factor in causing Mr. Franklin's injuries

85.     As a direct and proximate result of the Defendant's negligence and the breaches complained of herein, Mr. Franklin was severely injured and suffered damages.

86.     By reason of the foregoing, Mr. Franklin is entitled to recover damages for all general, special, and pecuniary damages proximately caused by Defendant and the defective condition of the iPhone.

87.     Wherefore, Mr. Franklin demands judgment against Defendant, for all actual and compensatory damages together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## RULE 23 CLASS ACTION CERTIFICATION REQUESTED

88.     Plaintiff adopts each paragraph set forth above as if fully set forth herein.

89.     Pursuant to Rule 23, Plaintiff seeks certification of a class action in this matter with respect to each of the claims alleged herein under the Texas Business and Commerce Code. Plaintiff has standing to seek class certification because he is a member of the putative class. Plaintiff suffered financial loss related to the conduct complained of herein and has suffered the

same injury and seeks the same relief as other members of the class and seeks to represent the class.

90.     Plaintiff seeks the certification of a Texas-only class of persons or consumers. Generally, Plaintiff seeks certification of a class defined generally as those Texas resident individuals, consumers, or owners of cell phones who purchased, acquired or own an iPhone 6 series equipped with the defective iPhone 6 series battery.

91.     The prerequisites of Federal Rule of Civil Procedure 23(a) are met. The members of such class are so numerous that joinder of all members is impracticable. Moreover, there are common questions of law and fact to the class which predominate, and the claims or defenses of the representative party here are typical of the claims and defenses of the class. The issues related to the existence of a defect in the iPhone 6 series devices, and the economic loss damage issues will all be common the class and will predominate over any individual issues.

92.     Plaintiff, along, with counsel, has proper standing and will fairly and adequately protect the interests of the class. Plaintiff has standing to bring the class claims, and he and his counsel will diligently pursue the subject claims for the class.

## CLAIMS ON BEHALF OF THE TEXAS CLASS

## COUNT 1

### TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT

*Texas Bus. & Com. Code §§ 17.41, et seq.*

93.     Plaintiff adopts and re-alleges each paragraph set forth above as if fully set forth herein.

94.     Apple is a "person," as defined by Tex. Bus. & Com. Code § 17.45(3).

95.     Plaintiff and the Texas class members are "consumers," as defined by Tex. Bus. &

Com. Code § 17.45(4).

96.     Apple advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code § 17.45(6).

97.     Apple engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code § 17.46(b), including:

a.      Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;

b.      Representing that goods or services are of a particular standard, quality or grade, if they are of another; and

c.      Advertising goods or services with intent not to sell them as advertised.

98.     Apple intended to mislead Plaintiff and Texas class members and induce them to rely on its misrepresentations and omissions.

99.     Apple's representations and omissions were material because they were likely to deceive reasonable consumers. The actions of Apple in concealing the defect intended to induce the Plaintiff and others into purchasing or acquiring the iPhone 6 series devices, and Plaintiff and all putative class members would otherwise not have entered the transactions if the information had been disclosed.

100.    Had Apple disclosed to Plaintiff and Texas class members that it misrepresented the devices, omitted material information regarding known defects and was otherwise engaged in deceptive, common business practices, Apple would have been unable to continue in business and it would have been forced to disclose the uniform defect in its devices. Instead, Apple represented that its devices were continually improving in speed and battery life, contained a great battery and

performed better than other devices on the market. Apple represented to its consumers all iPhone models, including the iPhone 6 series, upon purchase and upon first use, in Mr. Franklin's case August of 2018, included fundamental performance management to ensure that the battery and overall system operated as designed and the internal components were protected. Apple represented to consumers that prior to Mr. Franklin's purchase through today, iPhone 6 batteries use lithium-ion technology, and, when compared with older generations of battery technology, lithium-ion batteries charge faster, last longer, and have a higher power density for more battery life in a lighter package. Apple represented to iPhone 6 users that prior to Mr. Franklin's purchase through today that rechargeable lithium-ion technology provided the best technology for iPhone devices. Apple made these representations prior to the purchase of the subject phone and thereafter and to all potential purchasers of the iPhone 6 series devices. Upon launching the iPhone 6s and iPhone 6s Plus, Philip Schiller, Apple's senior vice president of Worldwide Marketing, stated, through an Apple September 9, 2015 Press Release "[t]he only thing that has changed with iPhone 6s and iPhone 6s Plus is everything" and "[t]hese are the most advanced iPhones ever, with 7000 series aluminum, ion-strengthened glass, the new 64-bit A9 chip, 12-megapixel iSight and 5-megapixel FaceTime HD cameras, faster Touch ID, LTE and Wi-Fi. Customers are going to love them." Apple represented to consumers prior to and subsequent to purchase of the subject iPhone 6, "A9, Apple's third-generation 64-bit chip powers these innovations with 70 percent faster CPU and 90 percent faster GPU performance than the A8, all with gains in energy efficiency for great battery life." Apple told consumers prior to and subsequent to purchase of the subject iPhone 6, "[w]ith second generation 64-bit desktop-class architecture, the all-new A8 chip offers faster performance and is more energy efficient, delivering higher sustained performance with great battery life." Further, Apple represented both prior to and subsequent to purchase of the subject

iPhone 6 its battery will last for 500 complete charge cycles. These representations were materially false because they failed to disclose the known defect, and because thousands of devices did not perform as stated under normal use. Plaintiff and the Texas class members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered, and Apple's misrepresentations and omissions induced them to purchase the devices in question.

101.    Apple failed to inform consumers of the defect and continued selling millions of devices, notwithstanding its knowledge of the defect. Apple had a duty to disclose the above facts due to the circumstances of this case. Apple's duty to disclose arose from its:

    a.    Possession of exclusive knowledge regarding the defect in its devices at the time of the purchase of the subject phone and thereafter;

    b.    Active concealment of the defect in its devices; and

    c.    Incomplete representations about its devices, device performance, and the battery life of devices.

102.    Apple engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3). Apple engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

103.    Consumers, including Plaintiff and Texas class members, lacked knowledge about the above business practices, omissions, and misrepresentations because this information was known exclusively by Apple.

104.    Apple intended to take advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree, with reckless disregard of the unfairness that

would result. The unfairness resulting from Apple's conduct is glaringly noticeable, flagrant, complete, and unmitigated.

105.    Apple acted intentionally, knowingly, and maliciously to violate Texas's Deceptive Trade Practices-Consumer Protection Act, and recklessly disregarded Plaintiff and Texas class members' rights. Apple's knowledge of the Devices' performance issues, put it on notice that the Devices were not as it advertised.

106.    As a direct and proximate result of Apple's unconscionable and deceptive acts or practices, Plaintiff and Texas class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Devices, and increased time and expense in dealing with Device performance issues. Apple's unconscionable and deceptive acts or practices were a producing cause of Plaintiff's and Texas class members' injuries, ascertainable losses, economic damages, and non-economic damages.

107.    Apple's violations present a continuing risk to Plaintiff and Texas class members as well as to the general public.

108.    Plaintiff and the Texas class seek all monetary and non-monetary relief allowed by law, including economic damages, damages for mental anguish, treble damages for each act committed intentionally or knowingly, court costs, reasonably and necessary attorneys' fees, injunctive relief, and any other relief which the court deems proper.

## **DAMAGES**

109.    Plaintiff adopts and re-alleges each paragraph set forth above as if fully set forth herein.

110.    With respect to Plaintiff's individual claims, Mr. Franklin demands judgment

against Defendant, for all actual and compensatory damages together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

111.    Further, Plaintiff suffered direct financial damages or benefit of the bargain damages by receiving an iPhone 6 series and its included defective iPhone 6 series battery, which were of a reduced value in comparison to such goods if they had been as represented and non-defective. All members of the class herein suffered the same or similar direct damages. Plaintiff, individually and on behalf of the members of the putative class, seeks these direct economic damages.

112.    Plaintiff suffered incidental damages as a result of the reasonable expenses incurred to replace the iPhone 6 series. The members of the class will incur the same or substantially similar economic damages. Plaintiff, individually and on behalf of the members of the putative class, seeks these incidental damages.

113.    Plaintiff has been required to incur attorney's fees and court costs to pursue the claims alleged herein and seeks recovery for the same. Plaintiff, individually and on behalf of the putative class, seeks to recover all attorneys' fees and costs pursuant to Tex. Civ. Prac. & Rem. Code. § 38.001(8), the DTPA, and Texas law.

114.    Plaintiff, individually and as representative of the putative class, prays for all damages to which he is entitled under both law and equity herein.

### CLAIM FOR PREJUDGMENT INTEREST

115.    Plaintiff seeks prejudgment interest at the maximum legal rate.

### APPLICATION OF SERVICEMEMBERS CIVIL RELIEF ACT

116.    Plaintiff adopts and re-alleges each paragraph set forth above as if fully set forth

herein.

117.    It is likely that members of the putative class include active-duty United States military personnel. As such, these individuals are entitled to the protections afforded by the Servicemembers Civil Relief Act, 50 U.S.C. 501 *et seq*. As such, the running of any applicable statute of limitations would be tolled during periods of active service.

## JURY DEMAND

118.    Plaintiff requests that a jury be convened to try the factual issues of this case.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays this Court certify the requested class and that judgment be entered in Plaintiff's favor against Defendant on all claims and for all damages alleged herein, order Apple to pay actual and statutory damages and restitution to Plaintiff and the other class members, as allowable by law,  order Apple to pay both pre- and post-judgment interest on any amounts awarded, order Apple to pay attorneys' fees and costs of suit; and order such other further relief as may be just and proper.

Respectfully submitted,

*/s/ Jeffrey T. Embry*
Jeffrey T. Embry
State Bar No. 24002052
Attorney-in-Charge
Christopher P. Peirce
State Bar No. 24046604
Matt Montgomery
State Bar No. 24041509
Margaret C. Pennell
State Bar No. 24116893
HOSSLEY & EMBRY, LLP
515 S. Vine Ave.
Tyler, Texas 75702
Ph.   903-526-1772
Fax. 903-526-1773
jeff@hossleyembry.com
meg@hossleyembry.com

**ATTORNEYS FOR PLAINTIFF AND TEXAS CLASS MEMBERS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing document was forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure on this the 23rd day of July 2021.

*/s/ Jeffrey T. Embry*

Jeffrey T. Embry

Paul R. Genender
**WEIL, GOTSHAL AND MANGES LLP**
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7877
Facsimile: (214) 746-7777
Email: Paul.Genender@weil.com

-and-

David R. Singh
California Bar No. 300840
**WEIL, GOTSHAL AND MANGES LLP**
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
Email: David.Singh@weil.com